IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CHARLES A. NOVOTNY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 06-0171-WS-C |
| ) | |
| RED ROCK HOLDINGS, LLC, and ) | |
| BARRY JERNIGAN, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

This matter is before the Court on Plaintiff Charles A. Novotny's Response to July 23, 2007 Order Regarding Judgment (doc. 56).

On July 23, 2007, the undersigned entered an Order (doc. 55) expressing unease with certain aspects of a judgment requested by plaintiff Charles A. Novotny against the two remaining defendants, Barry Jernigan and Red Rock Holdings, LLC, both of whom are in default.  In particular, the Court identified concerns that Novotny was requesting a judgment as to Red Rock that incorporated losses outside the scope of his claims against that defendant, that the form of judgment requested by Novotny raised the specter of a double recovery, and that some arrangement might be necessary to account for any settlement proceeds paid by a former defendant, Michael Jack Harbin, to resolve Novotny's claims against him in this lawsuit.  The July 23 Order explained that the Court's purpose in raising these issues was neither to impose additional expense on Novotny, nor to champion the interests of defaulted defendants who have not seen fit to participate or defend their interests in this action, but was instead to fulfill its duty to assure the existence of a legitimate basis for any damages award entered.

Novotny has now filed a Response (doc. 56) that substantially and satisfactorily addresses all of the reservations identified in the July 23 Order.  In particular, plaintiff would confine the default judgment against Red Rock to the particular note payable that is the subject of his claim against that defendant in the Complaint.  With regard to the double recovery issue, Novotny proposes that the undersigned enter judgment jointly and severally against Red Rock

and Jernigan for the full amount owed on the note payable, with a further judgment against Jernigan for the additional amounts to which that defendant agreed to be held liable via his Confession of Judgment (doc. 46).  In order to avoid any confusion as to which judgment is satisfied first, plaintiff suggests that the judgment specify that any funds collected from Jernigan must be applied first to the joint and several obligation and then to Jernigan's residual obligation.  Finally, to resolve any concerns regarding the Harbin settlement, Novotny proposes that the $5,000 in settlement proceeds received from Harbin be offset from the joint and several damages award against Red Rock and Jernigan, such that they will receive credit for settlement proceeds paid by Harbin.  All of these proposals are reasonable and equitable, and the Court is satisfied that the form of judgment they yield has a legitimate basis in both fact and law.

To avoid any ambiguity in the record, the Court explains the mechanics of the numerical calculations of the judgment as follows: The value of Novotny's claim against Red Rock for default of note payable, as established by the evidentiary submissions of Novotny in support of his request for default judgment, is $127,500 (which includes $90,000 in principal, plus $39,750 in accrued simple interest at the agreed rate of 10% per annum, from January 2003 through June 2007, less $2,250 in interest payments actually paid by Red Rock in 2003).  When the $5,000 settlement payment by Harbin is offset from that amount, the net amount of Novotny's proven damages against Red Rock on the default of note payable claim is $122,500.[1]  Judgment will be entered, jointly and severally, against Red Rock and Jernigan (who is alleged in the Complaint to have fraudulently induced Novotny to lend the money to Red Rock and to have converted the money for his own use) in that amount.  Because Jernigan has consented to entry of judgment against him in the amount of $160,000, an additional judgment will be entered against Jernigan for $37,500, which constitutes the difference between the $160,000 figure specified in his Confession of Judgment and the $122,500 for which Jernigan and Red Rock are being held jointly and severally liable.

One final complication concerns post-judgment interest.  The governing statute is 28

---

[1] No corresponding setoff for the Harbin settlement proceeds will be made with respect to the residual judgment against Jernigan because Jernigan expressly consented to having judgment entered against him in the amount of $160,000, without regard to any payments that had been or might be made by any other defendant.  (*See* July 23 Order, at 5 n.5.)

U.S.C. § 1961(a), which provides that interest on any money judgment in a civil case recovered in a district court "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment." *Id.* (footnote omitted). According to Federal Reserve Statistical Release H.15, dated August 20, 2007 and found at www.federalreserve.gov/releases/h15/current, the average 1-year constant maturity Treasury yield for the week ending August 17, 2007 was 4.44%. By contrast, plaintiffs request that post-judgment interest be awarded at a rate of 10%, which is the rate to which defendant Jernigan stipulated in his Confession of Judgment and the rate specified in the promissory note on which the judgment against Red Rock is predicated.

Nothing in § 1961(a) forbids parties from agreeing to a post-judgment interest rate that differs from that provided by statute. *See, e.g., Central States, Southeast and Southwest Areas Pension Fund v. Bomar Nat., Inc.*, 253 F.3d 1011, 1020 (7th Cir. 2001) (noting that "[i]t is well established that parties can agree to an interest rate other than the standard one contained in 28 U.S.C. § 1961" and applying interest rate to which parties had agreed in underlying pension trust agreement); *In re Lift & Equipment Service, Inc.*, 816 F.2d 1013, 1018 (5th Cir. 1987) (explaining that "[w]hile 28 U.S.C. § 1961 provides a standard rate of post-judgment interest, the parties are free to stipulate a different rate," and applying 10% interest rate set forth in assignment of accounts receivable, rather than standard rate delineated by § 1961); *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 244 F. Supp.2d 1250, 1272-75 (D. Kan. 2003) (surveying case law and concluding that § 1961(a) does not supersede interest rate agreed upon by parties in underlying purchase agreement).[2] Accordingly, the Court will award post-judgment interest to plaintiffs at

---

[2] Also significant is the Second Circuit's decision in *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96 (2nd Cir. 2004). In that case, the court opined as follows: "Similar to our sister circuits, we see nothing in § 1961 to prevent parties from setting their own post-judgment interest rates through private agreements, so long as those rates do not violate state usury or other applicable laws." *Id.* at 101. Notwithstanding that determination, the *D'Urso* court declined to apply the interest rate identified in the underlying purchase agreement because a specific feature of New York law (which governed that agreement) provides that contract language setting a particular interest rate accruing on a debt is interpreted as applying to the debt itself, and not to any judgment into which that debt is merged, unless the parties expressly state their intent to override that general rule. *Id.* at 102; *see also Society of Lloyd's v. Reinhart*, 402

the higher, 10% rate to which the parties have agreed, both in the underlying promissory note and in defendant Jernigan's Confession of Judgment.

A separate default judgment will be entered against both defendants to implement the foregoing.

DONE and ORDERED this 21st day of August, 2007.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

F.3d 982, 1004 (10th Cir. 2005) (following *D'Urso* and finding similar merger principles in Utah law). The undersigned's research does not reveal such an idiosyncrasy in Alabama law. To the contrary, Alabama authority specifically provides that contract interest rates govern post-judgment interest awards in contract actions, even in the absence of the parties' specific stated intent that they do so. *See* Ala. Code § 8-8-10 ("Judgments for the payment of money ..., if based upon a contract action, bear interest from the day of the cause of action, at the same rate of interest as stated in said contract."); *Southeast Enterprises, Inc. v. Byrd*, 720 So.2d 873, 876-77 (Ala. 1998) (reversing order of trial court awarding post-judgment interest at statutory rate, where parties had contracted for lower rate in mortgage); *Tri-Wood Realty, Inc. v. Pro Par, Inc.*, 373 So.2d 297, 300 (Ala. 1979) (determining that post-judgment interest on award should be set at 10% pursuant to lease agreement provision allowing landlord to recover cost of repairs with 10% interest, with no indication of any specific lease provision that the 10% figure would apply to any judgment into which the lease debt might be merged).